UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------

PETER W. LINDNER,
                          Plaintiff,                               06 CV 4751 (KMK)

-against -

INTERNATIONAL BUSINESS MACHINES
CORPORATION, ROBERT VANDERHEYDEN,
HEATHER CHRISTO HIGGINS, JOHN DOE #1,
and JOHN DOE #2
                          Defendants.
-------------------------------------------------

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITIONTO DEFENDANT'S MOTION TO DISMISS

Law Offices of Kenneth W. Richardson
Attorney for Plaintiff
305 Broadway, Suite 1100
New York, New York 10007
(212) 962-4277 Fax (212) 962-4294

BY:    KENNETH W. RICHARDSON

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..........................................................................ii

PRELIMINARY STATEMENT....................................................................1

STATEMENT OF FACTS............................................................................2

ARGUMENT.................................................................................................4

      POINT I.............................................................................................4

            STANDARD FOR 12(b)(6) MOTION.................................4

      POINT II............................................................................................5

            THERE EXISTS A CAUSAL CONNECTION
            BETWEEN PLAINTIFF'S PROTECTED
            ACTIVITY AND THE ADVERSE ACTION....................5

            A.    Retaliation Claim.........................................................6

      POINT III

            AN ORAL CONTRACT WAS
            ENTERED WITH GOOD AND
            VALUABLE CONSIDERATION.......................................7

      POINT IV

            STATUTE OF FRAUDS DOES
            NOT BAR THE AGREEMENT..........................................8

CONCLUSION............................................................................................10

# TABLE OF AUTHORITIES

**Cases**

Ambase Corp. v. City Investigating Co. Liquidating Trust,
326 F.3d 63, 72 (2d Cir. 2003)..................................................................................4

Bell Atlantic v. Twombly,
--- U.S. ---, 127 S.Ct. 1955,1965, 167 L.Ed.2d 929 (2007)....................................5

Camp Summit of Summitville, Inc., v. Visinski, 06-CV-4994, 2007
U.S. Dist. LEXIS 28496,**13-14 (S.D.N.Y. Apr. 13, 2007...................................9

Conley v. Gibson, 353 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)................4

Cron v. Hargro Fabric, Inc., 694 N.E.2d 56, 58 (N.Y.1998)..............................9,10

D & N Boening, Inc v. Kirsh Beverages, Inc.,
63 N.Y.2d 449, 454 N.E2d 992, 483 N.Y.S.2d 164(N.Y.1984).........................9

D & N Boening, Inc v. Kirsh Beverages, Inc., 472 N.E.2d 992, 993(N.Y. 1984)......9,10

Erickson v. Pardus, --- U.S., ---, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)......5

Global Network Communications, Inc. v. City of New York,
458 F.3d 150, 155 (2d Cir. 2006)...........................................................................4

Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001)..................................................4

North Shore Bottling Co. v. C. Schmidt & Sons, Inc.,
239 N.E.2d 189, 191 (N.Y.1968)..........................................................................10

Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998),
cert denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999).......................4

Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d Cir.1998)......................5

Rail Eur. v. Rail Pass Express, No. 94 Civ. 1506(PKL),
1996 U.S. Dist. LEXIS 4183, at * 12 (S.D.N.Y. April 3, 1996).............................10

Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007..............................................4,5

Milton Abeles, Inc., v. Creekstone Farms Premium Beef, LLC,
No. 06-CV-3893, Slip Copy, 2007 WL 1434990..................................................9,10

Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003)...............................................5

Warner v. Texas & Pacific Ry.,
164 U.S. 418, 434, 17 S. Ct. 147, 41 L. Ed. 495 (1896)........................................9


**Federal Statutes**

Fed. R. Civ. P. 12(b)(6).........................................................................................1

Fed. R. Civ. P. 8(a)(2)...........................................................................................5

Title VII of the Civil Rights Act of 1964...............................................................2

**State Statute**

N.Y. Gen. Oblig. Law § 5-701(a)(1)..................................................................8,9

## PRELIMINARY STATEMENT

Plaintiff, a former computer programmer at IBM brings this action alleging that he was retaliated against by IBM for complaining about discrimination when IBM communicated negative information about him to prospective employers. Plaintiff alleges that he was called "to quirky" by IBM who also said plaintiff "doesn't have enough knowledge of the subject". Plaintiff's claim also alleges that IBM is in breach of contract, tortuously interfered with a business relationship and defamed plaintiff.

Defendant has answered the complaint and now brings the within motion to dismiss pursuant to Fed. Rule 12(b)(6). This response is submit in opposition to said motion. There has been some discovery conducted to date but it is not completed. Defendant's motion states that plaintiff's retaliation claim should be dismissed because there is no causal connection between plaintiff's complaints about discrimination and any retaliatory act on the part of IBM. The motion to dismiss further claims that their was not an oral contract between plaintiff and IBM but that even if there was such a contract, it lacks consideration and is barred by the Statute of Frauds. Since there was not contract, argues IBM, their can be no breach, defamation of or tortuous interference.

The motion should be denied because a causal connection for retaliation purposes can be established. Further, plaintiff can establish the existence of an oral contract with consideration and that did not violate the Statute of Frauds. As there was a contract, there was tortuous interference with that contract. The contract was formulated when IBM promised plaintiff that there would be no future negative information communicated to any future prospective employer of plaintiff. This contract with IBM was itself breached by employees at IBM, name Heather Higgins and Robert Vanderheyden when they, in

1

fact, did communicate negative information to a prospective employer. Therefore, defendant's motion to denied must be denied in its entirety.

## STATEMENT OF FACTS

Lindner is a computer programmer and was employed in that capacity by IBM from 1999 through 2003 where his performance was always at least satisfactory. Lindner was also employed by IBM from about 1973 to 1978. Heather Higgins was Lindner's supervisor during his employment at IBM, while Robert Vanderheyden was a colleague and later a team leader of Lindner also at IBM. In or about August 2003, plaintiff was part of 5% of the workforce that was laid off. (Plaintiff's affidavit Exhibit A)

In or about April 2004, Lindner filed an age-discrimination claim against IBM with the Equal Employment Opportunity Commission ("EEOC").[1] (Exhibit B). The EEOC provided plaintiff a right-to-sue letter and plaintiff filed a complaint against IBM in May 2006. (Right-to-sue letter Exhibit C). An amended complaint has since been filed. In that action, plaintiff alleges retaliation, breach of contract, defamation and tortuous interference with a business relationship and age discrimination in violation of Title VII of the Civil Rights Act of 1964 and violations OWBPA, ADEA, and ERISA. (Exhibit D).

In August 2003, Lindner raised the issue with Heather Higgins and Robert Vanderheyden that he, Lindner, thought his lay off was age based, not skills or performance based, and presented a statistical analysis to back this up. See Exhibit A.

In or about March 1, 2004, Lindner applied for a full-time position with

---

[1] Mr. Lindner had file a claim for age discrimination with the EEOC in January 2004 but this charge was filed anonymously, requiring refilling of same in April 2004.

2

Genalytics, which was also a vendor to IBM. Lindner was scheduled to have an interview with Matthias Kehder, an employee of Genalytics, for a project that Genalytics was working on with IBM. Suddenly Mr. Kehder cancelled the appointment with Lindner. On information and belief, Heather Higgins and/or Robert Vanderheyden told Kehder that plaintiff was not suitable for this project of working with IBM's Marketing Intelligence Group.

In March 2004, Lindner called IBM in White Plains, and spoke to someone ("John Doe #1" as an placeholder name since Lindner is unable to find the name) to complain that Heather Higgins or Robert Vanderheyden had interceded with Lindner's potential employer, in retaliation against Lindner for filing a suit against IBM and against them in particular. John Doe #1 assured Lindner, for good and valuable consideration, that Doe would speak to them and that this would not happen again. Lindner thanked Doe for his kindness. This constituted an oral contract between IBM and Lindner for which there was valuable consideration. Lindner relied on Doe's statement and did not pursue an action against IBM at that time.

Plaintiff continued to pursue job leads and opportunities. On or about February 2005, plaintiff had a phone interview with Cathy Cooper of Wunderman Agency. Plaintiff thereafter met with Ms. Cooper and two of her associates to make a formal presentation. Ms. Cooper indicated that she had contacts and possible work with IBM groups that plaintiff had worked with.

On or about March 2005, Lindner was told by his agent that Cathy Cooper of Wunderman agency had declined to offer plaintiff a position or to continue interviewing him. On information and belief, Vanderheyden and/or Higgins told Cooper that Lindner

3

was "too quirky" and "doesn't have enough knowledge of the subject".

On or about March 2005, plaintiff again called IBM, White Plains, NY to complain to John Doe #2 that the retaliation had continued, despite the promises of John Doe #1.

## ARGUMENT

### POINT I

### STANDARD FOR A 12(b)(6) MOTION

Under a motion to dismiss under 12(b)(6) the courts have held it's purpose to be to "test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief *without* resolving a contest regarding its substantive merits." Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). The court "assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." id (citing Ambase Corp. v. City Investigating Co. Liquidating Trust, 326 F.3d 63, 72 (2d Cir. 2003)). Accordingly therefore, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." Gregory v. Daly, 243 F.3d 687, 691 (2d Cir. 2001) (quoting Conley v. Gibson, 353 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Additionally, "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed a part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007)(citing Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998), cert denied, 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999)). Under

Fed. R. Civ. P. 8(a)(2) civil complaints "shall contain…a short and plain statement of the claim showing that the pleader is entitled to relief." As stated by the Supreme Court "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true…" Bell Atlantic v. Twombly, --- U.S. ---, 127 S.Ct. 1955,1965, 167 L.Ed.2d 929 (2007) (internal citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the …claim is and the grounds upon which it rests.'" Erickson v. Pardus, --- U.S., ---, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (citations omitted). Therefore, under a 12(b)(6) motion "the bottom-line principle is that 'once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.'" Roth, 489 F.3d at 510 (quoting Bell Atlantic, 127 S.Ct at 1969).

## POINT II

### THERE EXISTS A CAUSAL CONNECTION BETWEEN PLAINTIFFS PROTECTED ACTIVITY AND THE ADVERSE ACTION

A.  **Retaliation Claim**

To establish a claim of retaliation, Plaintiff must show that: (1) he engaged in protected activity; (2) his employer was aware of this activity; (3) an adverse employment action was taken disadvantaging plaintiff; and (4) a causal connection between the protected activity and the adverse employment action. See Terry v. Ashcroft, 336 F.3d 128, 141 (2d Cir.2003)(quoting Quinn v. Green Tree Credit Corp., 159 F.3d 759, 769 (2d

Cir.1998).

Plaintiff meets this test. In complaining about age discrimination plaintiff engaged in a protected activity. Plaintiff's employer was aware of the protected activity in that plaintiff complained directly to his manager and project leader at IBM. The adverse employment action consisted of plaintiff being denied the opportunity to procure employment unfettered by any negative actions by IBM. The point of contention that IBM raises is that there is no causal connection due to the time that transpired between the protected activity and the retaliatory act. According to plaintiff's affidavit, plaintiff presented his view of being discriminated against because of age to both Ms. Higgins and Mr. Vanderheyden on August 18, 2003. The following March of 2004 is when the first retaliatory act is alleged to have taken place. At that juncture, plaintiff sought and received assurance from a John Doe at IBM that any negative comments flowing from IBM about plaintiff to a prospective employer would cease. The next incident took place in February/March 2005. Plaintiff had presented a formal presentation to Wunderman Agency on February 23, 2005. The following month plaintiff was advised by his agent that Wunderman had turned down plaintiff's employment application. Plaintiff concludes that both Ms. Higgins and Mr. Vanderheyden passed on negative information thereby interceding with plaintiff's ability to gain employment with Wunderman Agency. Plaintiff states that either Ms. Higgins of Mr. Vanderheyden told Ms. Copper at the Wunderman Agency that plaintiff was "to quirky" and that "he doesn't have enough knowledge of the subject". From August 18, 2003 to sometime in March, 2004 is approximately seven months. The time between plaintiff's January 27, 2004 EEOC filing and the March statements by Higgins and Vanderheyden is only a month to a month and a half.

6

Regarding the Wunderman situation, it is about 17 months from the protected activity to the retaliatory act committed around March 2005, and around 13 or so months from the January 2004 EEOC filling. While there are a line of cases holding the retaliatory act to a shorter period of time than 17 or 13 months, none of those cases establish a clear cutoff period of time. The length of time should not automatically mean that plaintiff was not retaliated against.

## POINT III

### AN ORAL CONTRACT WAS ENTERED WITH GOOD AND VALUABLE CONSIDERATION

Defendant's proclaim that any contemplated contract was never entered because it lacked consideration. It is plaintiff's position that there was in fact valuable consideration for the oral contract. Plaintiff did speak with IBM and express his concern that IBM had deflected his job prospects by providing the prospective employers, Genalytics and Wunderman Agency with less than stellar recommendations. Plaintiff called IBM stating that his job prospects were hindered by IBM and that plaintiff wanted this to stop. Plaintiff then did receive assurance that this behavior would stop. This constituted a valid oral agreement or contract. Clearly, in order to have a valid contract there must be consideration. In the case at hand there was such consideration. Plaintiff received the consideration of gaining an opportunity for future employment unimpeded by the interference of IBM's negative recommendations. IBM gained the benefit of not being sued by Plaintiff. Defendant's claim that the contract lacked consideration because contracting to do what one is already obligated to do cannot be consideration is not

7

persuasive here. That is because defendant's claim that IBM was already obligated to not retaliate against plaintiff might be true but it is not what was bargained for by plaintiff. Plaintiff's main concern was to get IBM to stop passing along negative information about him so that he might procure employment. It is not relevant that defendant, or even plaintiff might want to put a label on what IBM was doing and therefore make reference to it as retaliation. It was and remains a valid contract with valuable consideration on both sides and not in violation of the Statute of Frauds. Therefore, defendants argument that since the oral agreement fails, the claims for defamation, breach of contract and tortuous interfering with a business relationship must also fail, is not valid.

## POINT IV

### STATUTE OF FRAUDS DOES NOT BAR THE AGREEMENT

The oral agreement by plaintiff and defendant is not barred by the Statute Of Frauds. The Statute Of Frauds states that "an agreement that by its terms cannot be performed within one year of its creation is void unless it is in writing. N.Y. Gen. Oblig. Law § 5-701(a)(1).

This does not apply to the within matter because the oral contract is not a contract that could not be performed within a year. The agreement to not impede with plaintiff's quest for employment by providing negative reference information could be performed within a year because plaintiff could have procured employment within a year of the making of the oral agreement and was of indefinite duration. Therefore this not a contract that could not be performed within a year.

In attempting to establish that any oral contract entered into by plaintiff and

8

defendant was barred by the Statute Of Frauds defendant states in his brief that the fact that the breach took place more than a year from the making of the oral agreement is undeniable evidence that the alleged agreement could not be performed within a year. Defendant relies on the case of Camp Summit of Summitville, Inc., v. Visinski, 06-CV-4994, 2007 U.S. Dist. LEXIS 28496,**13-14 (S.D.N.Y. Apr. 13, 2007 in which the court determined that the statute of frauds did not apply to an employment at will situation. However, that case also clearly states that under the N.Y. Gen. Oblig Law § 5-701(a)(1) (McKinney 2007):

> The question is not what the probable, or expected, or actual performance of the contract was; but whether the contract, according to the reasonable interpretation of its terms, required that it should not be performed within the year

Camp citing, D & N Boening, Inc v. Kirsh Beverages, Inc., 63 N.Y.2d 449, 454 N.E2d 992, 483 N.Y.S.2d 164(N.Y.1984) (quoting Warner v. Texas & Pacific Ry., 164 U.S. 418, 434, 17 S. Ct. 147, 41 L. Ed. 495 (1896))

The Statute of Frauds includes "only those contracts which , by their terms, 'have absolutely no possibility in fact and law of full performance within one year,'" Milton Abeles, Inc., v. Creekstone Farms Premium Beef, LLC, No. 06-CV-3893, Slip Copy, 2007 WL 1434990, (quoting Cron v. Hargro Fabric, Inc., 694 N.E.2d 56, 58 (N.Y.1998) ) (quoting D & N Boening, Inc v. Kirsh Beverages, Inc., 472 N.E.2d 992, 993(N.Y. 1984)), stating that "full performance by all parties must be possible within a year to satisfy the Statute of Frauds." See Cron, at 59. "[I]f an agreement may be fairly and reasonably interpreted to permit performance within a year, the Statute of Frauds will not bar a breach of contract action no matter how improbable it may be that performance will

actually occur within that time frame." Cron. at 58.

New York has also carved out exceptions to the rule that oral contracts for an indefinite term are unenforceable under the Statute of Frauds. It was stated by the New York Court of Appeals in the case of D & N Boening that the Statute of Frauds would not be a bar where "an agreement where at any time, one or both parties could discontinue their activities, or reject any or all particular transactions,…or determine for any just of sufficient reason that termination was necessary for the good of the business." D & N Boening, Inc., 472 N.E.2d at 995 (citations omitted); see North Shore Bottling Co. v. C. Schmidt & Sons, Inc., 239 N.E.2d 189, 191 (N.Y.1968). In Milton at 9 it was stated "The practice of the New York courts has been to construe this one-year provision of the statute narrowly to give effect to oral contracts which are capable of being performed within one year. Thus, the one-year provision has been held to bar enforcement of oral contracts only in those cases where the contract is 'by express stipulation not to be performed within a year" and not to cases 'in which the performance of the agreement depends upon a contingency which may or may not happen within the year.") (quoting North Shore, 239 N.E.2d at 191 )Rail Eur. v. Rail Pass Express, No. 94 Civ. 1506(PKL), 1996 U.S. Dist. LEXIS 4183, at * 12 (S.D.N.Y. April 3, 1996) ("Since the agreement could be terminated by either party in less than a year, it falls outside of the Statute of Frauds.") (citations omitted).

## CONCLUSION

It is apparent that without further discovery it is too early to rule that the case should be dismissed. For all of the reasons as stated herein it is requested that defendant's motion to dismiss be denied in all its particulars and for such other and further relief as to

end
10

this court seems just and proper.

11