USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ____
DATE FILED: 11/30/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PETER W. LINDNER,

Plaintiff,

-v-

INTERNATIONAL BUSINESS MACHINES CORP., ROBERT VANDERHEYDEN, HEATHER CHRISTO HIGGINS, JOHN DOE #1, and JOHN DOE #2,

Defendants.

No. 06 Civ. 4751 (RJS)
ORDER

RICHARD J. SULLIVAN, District Judge:

The Court is in receipt of a letter from Plaintiff dated November 25, 2009, requesting an extension of the deadline for his supplemental filing in opposition to Defendants' motion for summary judgment and requesting that the Court sanction Defendant IBM for refusing to respond to his requests for extensions. The letter is attached to this Order.

The Court, by Order dated November 20, 2009, informed Plaintiff that it would consider granting him an extension for medical reasons if he provided a letter from his physician. As Plaintiff still has not provided such a letter, the request is DENIED, and Plaintiff's supplemental filing remains due tomorrow, December 1, 2009. Plaintiff's request that the Court sanction Defendant IBM is also DENIED.

Dated: November 30, 2009
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

A copy of this Order was e-mailed to:

Peter W. Lindner
nyc10003@nyc.rr.com

Scott P. Benjamin
benjamin@bvesq.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
PETER W. LINDNER,
Plaintiff,

-against-

INTERNATIONAL BUSINESS MACHINES CORPORATION, ROBERT VANDERHEYDEN, HEATHER CHRISTO HIGGINS, JOHN DOE #1, and JOHN DOE #2,
Defendants.
------------------------------------X

06 Civ. 4751 (RJS) (DFE)
This is not an ECF Case

REQUEST FOR EXTENSION TO RESPOND TO MOTION FOR SUMMARY JUDGMENT AFTER MEDICAL OPERATION AND FOR SANCTIONS

Wednesday, November 25, 2009
Via email

To the USDJ Sullivan:

I hereby ask USDJ Sullivan for sanctions on JacksonLewis for their refusal to abide by Your Honor's Standing Order on extensions ¶D4 (below). I had requested IBM's response some 3 hours ago, and they have not replied.

Basically, whether or not Your Honor likes IBM to not follow Your Honor's rules, IBM should a priori follow those rules. Given that IBM follows Your Honor's rules, Your Honor can then decide to always rule for IBM or not, as is the case with a judge who has quite extraordinary powers. It is unseemly for IBM to assume that they can not follow the rules, or in this case, Your Honor's orders, and then calmly await Your Honor to rule in their favor, whether or not Your Honor later does rule in their favor and against me.

Specifically, I asked for time to repair my computer, and IBM has a lot of knowledge about computers, as do I, and yet IBM chose not to inform Your Honor that my request was reasonable. It took weeks for Your Honor to understand that. I blame Your Honor for that, since if Your Honor had insisted that IBM respond, they would have indicated that I was telling the truth, and Your Honor could have ruled in my favor, or Your Honor could have defied that rational reasoning and ruled against me. In other words,

- maybe I was making things up, and crying "wolf" when there was no wolf,
- or I was crying "wolf" when there was a wolf but Your Honor chooses not to help me against the wolf.

In the parlance, IBM is a specialist on wolves.

I venture to say that the US Justice System is predicated upon the adversary system, where IBM and I are adversaries, and Your Honor is the arbiter. If IBM decides it can rely upon Your Honor to make its points, then the adversary system falls apart. Maybe IBM could have helped both me and Your Honor by stating that moving from one computer to a newer one takes time, and if the C: drive crashes, then it is a solvable problem that takes time, money and effort, but it is rarely futile, if ever. I remind Your Honor that Your Honor described my attempts as "futile". Perhaps it is irrelevant whether Your Honor was wrong or not, and that regardless of my computer problems, I had to respond

by a fixed date certain, which is Your Honor's prerogative. But surely to have Your Honor change positions because of a lack of knowledge on Your Honor's part, a lack that was caused by IBM's refusal to respond to my request for IBM agreeing to a delay in my filing a document, and if not then what their reason is, why then quite frankly, Your Honor is made to look foolish at both my and at Your Honor's expense. And by respond, I mean ¶D(4): "(4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent."

> "**D. Requests for Extensions**. Absent an absolute emergency, requests for adjournments, extensions of time, extensions of page lengths in memoranda, etc., must be received in chambers at least 48 hours prior to the scheduled appearance or deadline. All requests for adjournments or extensions of time must state: (1) the original date, (2) the number of previous requests for adjournment or extension, (3) whether these previous requests were granted or denied, and (4) whether the adversary consents, and, if not, the reasons given by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order must be attached."
> ["Individual Rules of Practice - August 18th, 2009", Hon. Richard J. Sullivan]

Then it happened a second time when I had a medical procedure that would cause me pain, and make me incapable of making "important or legal decisions." Your Honor decided against reason, that I needed to get the doctor to write a note. Now, Your Honor, shouldn't that be what the adversarial system is designed for? Would not IBM be skeptical of my story – maybe I made it up, maybe I conflated a minor boo-boo (not a medical term) into a serious operation. But, had IBM indicated that last week, I could have gotten the information to them, they could call their medical experts, and could determine that a mistake in the operation could leave me paralyzed from the waist down. And that I'd be given a drug both before, during and after the medical procedure.

**Cruel and Unusual Punishment**

I pointedly note here that I did not take my **prescribed** pain medication yesterday or today, so that I could write without my thoughts being clouded by drugs.

This contrasts to my Monday, November 23 letter where Your Honor forced me to respond **despite** my pain, **medication**, and doctor's orders not to make important or legal decisions.

For the record, I protest that Cruel and Unusual Punishment[1] which I think would bring dishonor upon the Court if done in a criminal case, but more dishonor if done with deliberation in a civil case.

I assumed Your Honor does not understand computers, but also Your Honor does not understand medical procedures. For some lucky reason, the US Judicial System does not require that knowledge of US District Judges, and I think the "luck" has to do with the adversarial process. Had IBM as my sworn adversary researched the matter and concluded I was telling the truth, then Your Honor could have more easily made the right decision.

It is also a principle of law that a person has to know what he is doing in order to commit a crime. If I am under a medicine (I don't know if it is a muscle relaxant, a narcotic, or whatever), and am told not to make legal decisions, it is unconscionable for IBM to insist that I do, and then it is unconscionable for Your Honor to insist that I do. Am I making the point too strongly?

---

[1] US 8th Amendment to the Constitution: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

Which leads me to my question: what could Your Honor have done to determine if my operation was a sham, a lie, the real thing, an exaggeration, or whatever? And the answer, Your Honor, is to use the adversarial process.

Thus, the answer would have been to *sua sponte* sanctioned IBM 3 days on their time to reply to my response, sanction Kevin, Dana and JacksonLewis each $10,000 not payable by anyone outside of themselves for violating Your Honor's rules, and then granting me a month to reply.

I could surely use the $30,000 and the extra time.

But, the proposed "sanctions" might have a salutary effect of making it clear that there is equal justice before the law, and that henceforth IBM should not "play games" with Your Honor's rules.

On the other hand, maybe IBM could research and respond and say: "A disk crash is a futile exercise that is impossible to fix, and could have been prevented had Mr. Lindner followed the basic rules of computers" or could have said "An epidural injection is a trivial matter akin to a flu shot with 99.99%[2] of the cases hurting no more than 15 minutes and a 1 in a million chance of effects longer than 1 hour." The point is: it is not a matter of conjecture, since there is adequate data for both medical and computer problems to formulate what the average damage and time to repair is. Alas, we do not know what IBM would say, since Your Honor gave them carte blanche to get their way with no reason whatsoever, effectively short circuiting the American brand of adversarial justice, and inserting an adversarial aspect between Your Honor and me.

**Conclusion**

IBM's passive aggression was not responding to a reasonable request which is required as per Your Honor's order. This made my application for my response for summary judgment needlessly complex by IBM's refusing to abide by USDJ Sullivan's Individual Order 1.D(4). In effect, IBM put the burden on USDJ Sullivan by not giving me **IBM's** reasons for opposing my requests for extension, and put me in a bad position where I had to reply to USDJ Sullivan when I was medically unable to.

Consequently since IBM did not respond today, Wednesday, November 25, 2009 that IBM has a reason for refusing to consent to agree to my date of Wednesday, December 10 for my response, and for Monday, December 14, for IBM's reply, I ask that it be accepted as "silence gives consent". IBM has the option of a show cause reason why the dates should be modified, and why IBM should be freed from a sanction of $10,000 per person with $10,000 for JacksonLewis to wake them up.

This will compensate me for the Thursday/Friday of Thanksgiving where the law library is closed and it's a national holiday, and for the Monday-Wednesday November 23-25, 2009 that I was under the effects of my medical procedure, which IBM could have verified on its own, without Your Honor's interference or Your Honor's attention.

Needless to say, but I say it anyhow, Your Honor could have refused to agree to an extension even if IBM agreed to it, such being the power of The Court.

---

[2] I am making up numbers – but my point is: there are actual hard numbers on such items, which can be gotten in minutes or hours.

I also ask that The Court compel IBM to please explain the reasons on the last two extensions why IBM felt they did not need to follow rule (D)(4) which required either IBM's consent, or IBM's reasons for their opposition to consent.

Even if Your Honor determines that IBM does not have to follow Your Honor's rules, it is customary to make those pronouncements *ex cathedra*, so to speak. In that fashion, I can use that as a basis for appeal, since as I understand it, only matters on the record can be used for appeal.

Another point is that IBM's refusal to help Your Honor in determining if a C: disk drive crash is minor, major, a fallacy, etc., should be a warning sign to both Your Honor and to the others who read this brief: it does not serve justice to have one side skirt the rules and prevail. Sometimes, and here I differ with US Supreme Court Justice Scalia, a fair trial is not one where the trappings of justice are observed, even if an innocent man is going to be put to death. I say: if the man is actually innocent, he should be freed even if the trial was fair. So, Your Honor, a stronger sanction upon IBM is that they would forgo writing any reply to my response to IBM's summary judgment motion. And a stronger response still would be to deny IBM's summary judgment entirely for their refusal to obey the simple rules indicated in Your Honor's individual practices. And a stronger sanction still is to move directly to jury trial to determine the exten of my damages caused by IBM, and for the ultimate trier of fact todetermine if IBM and JacksonLewis lied to the Court when they wrote that all relevant email had been turned over, or alternately, whether IBM had destroyed those emails (including the Janik Letter), maliciously or otherwise.

Thus, the sanctions I propose to Your Honor will enable Your Honor to get documents a day early, by cutting a day off IBM's delivery date, and adding one week to mine (which means my not submitting my response until December 10, 2009; I note that JacksonLewis claims that they will not be since Kevin is away then, even though IBM has had several weeks to work on my already submitted initial response).

Also, I wish to ensure that IBM be prevented from getting a statement from Bob and Heather and from my witnesses, so that IBM and I are working on a roughly level playing field.

Respectfully submitted,

By: ____________________ Date: Wednesday, November 25, 2009

Peter W. Lindner
Plaintiff, Pro Se

1 Irving Place, Apt. G-23-C
New York, New York 10003
Home & Fax: 212-979-9647
Cell: 917-207-4962

cc: Kevin Lauri, via fax